**STATE v. MARINO**

[229 N.C. App. 130 (2013)]

STATE OF NORTH CAROLINA
v.
JORY JOSEPH MARINO

No. COA12-1422

Filed 20 August 2013

1. **Criminal Law—prosecutor's closing argument—not so grossly improper—*ex mero motu* intervention not required—no prejudice**

     The trial court did not err in a driving while impaired case by failing to intervene *ex mero motu* to address the State's closing argument. Although the State pushed the bounds of impropriety, its remarks during closing argument were not so grossly improper that the trial court erred by failing to intervene *ex mero motu*. Furthermore, even assuming *arguendo* that the State's closing argument was improper, defendant failed to make a definitive showing of prejudice to warrant a new trial.

2. **Motor Vehicles—driving while impaired—Intoximeter source code—not discoverable**

     The trial court did not err in a driving while impaired case by denying defendant's motions to examine the Intoximeter source code. Defendant failed to show the Intoximeter source code to be "favorable" to his case or "material either to guilt or to punishment." Furthermore, neither *Crawford v. Washington*, 541 U.S. 36, nor *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, stands for the proposition that defendant has a right under the Sixth Amendment to examine the Intoximeter source code. The trial court exceeded its authority under statute and erroneously ordered the State to produce the data from the Intoximeter.

3. **Motor Vehicles—driving while impaired—motion for appropriate relief—no evidentiary hearing**

     The trial court did not err by denying defendant's motion for appropriate relief (MAR) in a driving while intoxicated case without an evidentiary hearing. Disposing of the MAR without an evidentiary hearing was within the discretion of the trial judge and the trial judge did not abuse his discretion.

     Appeal by defendant from judgment entered 18 May 2012 and order entered 24 July 2012 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 24 April 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State.*

*The Law Office of Bruce T. Cunningham, Jr., by Bruce T. Cunningham, Jr., for defendant appellant.*

McCULLOUGH, Judge.

Jory Joseph Marino ("defendant") appeals from his convictions for impaired driving ("DWI") and speeding. For the following reasons, we find no error.

## I. Background

On the evening of 21 March 2009, at approximately 10:40 p.m., Officer Robbie Moore ("Officer Moore"), at that time a patrol officer with the Pinehurst Police Department ("PPD"), stopped defendant on Morganton Road in Pinehurst, North Carolina, after clocking him speeding 52 m.p.h. in a 35 m.p.h. zone. Defendant and his wife were in the vehicle. As Officer Moore approached the vehicle, defendant, who was driving, rolled his window down. Officer Moore testified he was initially going to ask defendant to move his car further off the road but changed his mind when he noticed the smell of alcohol coming from the vehicle.

When Officer Moore informed defendant that he was speeding, defendant disputed the allegation stating, "I wasn't speeding. I could have swore I was only going 35 or 36 miles per hour." Officer Moore testified that defendant's speech was slightly slurred and his face seemed flushed.

Due to the smell of alcohol, combined with defendant's slurred speech and flushed face, Officer Moore became concerned about the possibility of impaired driving and inquired into whether defendant had had anything to drink. Defendant initially denied having anything to drink; yet, after Officer Moore performed a quick version of the horizontal gaze nystagmus ("HGN") test, and two preliminary breath tests indicated the presence of alcohol, defendant admitted that he may have had a couple of drinks with dinner.

Officer Moore then asked defendant to exit the vehicle to perform several standardized field sobriety tests. Defendant's wife remained inside the vehicle. Officer Moore indicated that, once defendant exited the vehicle and the two were face-to-face, he could smell alcohol coming from defendant's mouth.

Officer Moore administered three separate field sobriety tests; an HGN test, a walk-and-turn test, and a one-leg stand test. Officer Moore testified that each test revealed numerous indicators that defendant was impaired. Defendant was then given an additional preliminary breath test which, like the prior breath tests, indicated the presence of alcohol. Based on the totality of his observations, Officer Moore formed the opinion that defendant was impaired by alcohol. As a result, Officer Moore placed defendant under arrest and transported him to the PPD. Defendant's wife followed behind them.

At approximately 11:30 p.m., with his wife present, defendant consented to a chemical analysis breath test on the Intoximeter EC/IR II ("Intoximeter") at the PPD. Defendant's first and second breath samples registered alcohol concentrations of .11 and .10 grams of alcohol per 210 liters of breath, respectively. A citation was then issued charging defendant with DWI and speeding. Officer Moore continued to believe that defendant was impaired by alcohol throughout the testing of defendant's breath.

Defendant's citation originally came on for trial in Moore County District Court. Upon entry of a guilty judgment defendant appealed to Moore County Superior Court.

On 29 June 2010, defendant filed a motion for *Brady* material and a request for disclosure, objection to affidavit, and motion *in limine*. Several days later on 2 July 2010, defendant filed an additional motion seeking an order finding materiality, relevance, and necessity of the Intoximeter software source code. The purpose of the 2 July 2010 motion was to facilitate the pretrial issuance of a subpoena to out-of-state witnesses in order to procure the source code so that defendant could mount a challenge to the Intoximeter results. The State filed a response on 6 August 2010.

Defendant's motions came on for hearing in Moore County Superior Court on 3 November 2010 before the Honorable James M. Webb ("Judge Webb"). By order filed 18 November 2010, the court ordered the State to provide defendant with "all downloaded and non-downloaded data in its possession that was generated from [the] Intoximeter [used to analyze defendant's breath.]" The court, however, deferred ruling on the materiality of the Intoximeter source code until defendant had had the opportunity to analyze the data produced by the State.

On 11 February 2011, the State provided defendant with data from the Intoximeter used to analyze defendant's breath. Thereafter, following numerous hearings on issues of discovery, the trial court denied

defendant's motion for an order finding the Intoximeter source code material in open court on 8 December 2011.

Defendant's case came on for trial *de novo* in Moore County Superior Court on 14 May 2012, Judge Webb presiding. At the conclusion of the trial, the jury returned verdicts finding defendant guilty of DWI and speeding.[1] Judgment was entered on defendant's DWI conviction on 18 May 2012 and defendant was sentenced to a term of 60 days' imprisonment; the term was suspended on condition that defendant complete 12 months of unsupervised probation and pay costs, fines, and fees.

Defendant appealed to this Court. Following notice of appeal, on 29 May 2012, defendant filed a Motion for Appropriate Relief ("MAR") in Moore County Superior Court. Defendant's MAR was denied by order filed 24 July 2012.

## II. Analysis

### Improper Closing Argument

[1] Defendant's first argument on appeal is that portions of the State's closing argument were grossly improper. Consequently, defendant contends that he was denied a fundamentally fair trial and is entitled to a new trial.

As our Supreme Court reiterated in *State v. Jones*, "[a] lawyer's function during closing argument is to provide the jury with a summation of the evidence, which in turn serves to sharpen and clarify the issues for resolution by the trier of fact, and should be limited to relevant legal issues." 355 N.C. 117, 127, 558 S.E.2d 97, 103 (2002) (internal quotation marks and citations omitted). Thus,

> [d]uring a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

---

1. The jury unanimously found defendant guilty of DWI on both of the following grounds: (1) defendant was under the influence of an impairing substance; and (2) defendant had consumed sufficient alcohol that at any relevant time after the driving defendant had an alcohol concentration of 0.08 or more grams of alcohol per 210 liters of breath.

N.C. Gen. Stat. § 15A-1230(a) (2011). Furthermore, "[i]n considering specific cases of improper argument, we acknowledge our oft-quoted refrain – 'that counsel are given wide latitude in arguments to the jury and are permitted to argue the evidence that has been presented and all reasonable inferences that can be drawn from that evidence.' " *Jones,* 355 N.C. at 128, 558 S.E.2d at 105 (quoting *State v. Richardson,* 342 N.C. 772, 792-93, 467 S.E.2d 685, 697 (1996)).

In this case, defendant asserts that "the failure of the trial court to intervene, *ex mero motu,* to address the grossly improper closing argument of the State constituted plain error and an abuse of discretion[.]"

At the outset, we note that defendant has muddled different standards of review. "[T]his Court has stated that plain error review is appropriate only 'when the issue involves either errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence.' " *State v. Walters,* 357 N.C. 68, 110, 588 S.E.2d 344, 369 (2003) (quoting *State v. Cummings,* 346 N.C. 291, 314, 488 S.E.2d 550, 563 (1997), *cert. denied,* 522 U.S. 1092, 139 L. Ed. 2d 873 (1998)). "The standard of review for alleged errors in closing arguments 'depends on whether there was a timely objection made or overruled, or whether no objection was made and defendant contends that the trial court should have intervened *ex mero motu.*' " *State v. Chappelle,* 193 N.C. App. 313, 325, 667 S.E.2d 327, 334 (2008) (quoting *Walters,* 357 N.C. at 101, 588 S.E.2d at 364). "If there is an objection, this Court must determine whether 'the trial court abused its discretion by failing to sustain the objection.' " *Walters,* 357 N.C. at 101, 588 S.E.2d at 364 (quoting *Jones,* 355 N.C. at 131, 558 S.E.2d at 106). If there is no objection, "this Court must determine if the argument was 'so grossly improper that the trial court erred in failing to intervene *ex mero motu.*' " *Id.* (quoting *State v. Barden,* 356 N.C. 316, 358, 572 S.E.2d 108, 135 (2002)).

> In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*Jones,* 355 N.C. at 133, 558 S.E.2d at 107. In either case, in order for an improper closing argument to constitute reversible error, the "prosecutor's remarks must be both improper and prejudicial." *Id.* at 133, 558 S.E.2d at 107-08.

STATE v. MARINO

[229 N.C. App. 130 (2013)]

In this case, defendant contends that the State's closing argument as a whole "reveals a pattern of speculation, misstatement of the law, opinion, mean-spiritedness, and prejudicial stereotyping[.]" Additionally, defendant identifies specific remarks made during the State's closing argument that he alleges were improper because they (1) speculated that this was not the first time defendant had driven impaired, (2) were sarcastic and provoked a sense of class envy, (3) tended to shift the burden of proof to defendant, and (4) indicated defendant's witnesses were hypocrites and liars. As a result of the alleged improper arguments, defendant argues he was denied a fundamentally fair trial.

As recognized by the State, defendant did not object to any of the remarks he now asserts were improper.[2] Therefore, we review the State's closing argument for gross impropriety.

After reviewing the entirety of the State's closing argument and considering the context in which the specifically challenged remarks were made, *see State v. Call*, 349 N.C. 382, 420, 508 S.E.2d 496, 519 (1998) ("[C]omments must be viewed in the context in which they were made and in light of the overall factual circumstances to which they referred."), we hold that, although the State pushed the bounds of impropriety, its remarks during closing argument were not so grossly improper that the trial court erred in failing to intervene *ex mero motu*. Defendant received a fundamentally fair trial.

Furthermore, even if a closing argument is grossly improper, the failure of the trial court to intervene *ex mero motu* does not necessarily constitute reversible error.

> [Our Supreme] Court has on numerous occasions found closing arguments to be outside the bounds of propriety, with varying consequences. For some violations – those in which the defendant failed to object or that lacked a definitive showing of prejudice caused by the improper argument – we have opted to warn or discipline the offending attorney in lieu of awarding a new trial.

---

2. In his reply brief, defendant asserts that he did object to a portion of the State's closing argument and he should not be penalized for failing to offer further objections. A review of the record shows that defendant did in fact object to the State's comment, "Don't call yourself an instructor if you don't know how to teach, and don't call yourself an instructor if you don't even know the topic of the subject matter. Just grab your check from [defendant] and head on out the courtroom." On appeal, however, defendant did not argue that the statement to which he objected was improper. We do not penalize defendant for failing to object; yet, we find defendant's single objection insufficient to serve as an objection to the remainder of the State's closing argument.

*Jones*, 355 N.C. at 129, 558 S.E.2d at 105. Assuming *arguendo* that the State's closing argument was improper in the present case, defendant has failed to make a definitive showing of prejudice to warrant a new trial. Thus, we simply warn the State.[3]

### Intoximeter Source Code

**[2]** The second issue raised by defendant on appeal is whether the trial court erred in denying his motions to examine the Intoximeter source code. In support of his assertion that the trial court erred, defendant raises constitutional arguments.

Defendant first contends that he is entitled to the Intoximeter source code pursuant to *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215 (1963). "Under *Brady v. Maryland,* the United States Supreme Court held that 'the suppression by the prosecution of evidence *favorable* to an accused upon request violates due process where the evidence is *material either to guilt or to punishment,* irrespective of the good faith or bad faith of the prosecution.' " *State v. Cornett,* 177 N.C. App. 452, 456, 629 S.E.2d 857, 859 (2006) (quoting *Brady,* 373 U.S. at 87, 10 L. Ed. 2d at 218) (emphasis added). As the Supreme Court has further explained:

> The Brady rule is based on the requirement of due pro-
> cess. Its purpose is not to displace the adversary system
> as the primary means by which truth is uncovered, but to
> ensure that a miscarriage of justice does not occur. Thus,
> the prosecutor is not required to deliver his entire file
> to defense counsel, but only to disclose evidence favor-
> able to the accused that, if suppressed, would deprive the
> defendant of a fair trial[.]

*U.S. v. Bagley,* 473 U.S. 667, 675, 87 L. Ed. 2d 481, 489-90 (1985).

"However, in *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342 (1976), the United States Supreme Court rejected the idea that every nondisclosure automatically constitutes reversible error and held that 'prejudicial error must be determined by examining the materiality of the evidence.' " *State v. Tirado,* 358 N.C. 551, 589, 599 S.E.2d 515, 540 (2004) (quoting *State v. Howard,* 334 N.C. 602, 605, 433 S.E.2d 742, 744

---

3. Without raising it as a separate issue on appeal, defendant asserts several times in his argument that, to the extent his counsel failed to object at trial, he received ineffec- tive assistance of counsel. We dismiss this argument as defendant has not demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Allen,* 360 N.C. 297, 316, 626 S.E.2d 271, 286, *cert. denied,* 549 U.S. 867, 166 L. Ed. 2d 116 (2006).

STATE v. MARINO

[229 N.C. App. 130 (2013)]

(1993)). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494. Defendant bears the burden of showing materiality. *Tirado*, 358 N.C. at 589-90, 599 S.E.2d at 541. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *U.S. v. Agurs*, 427 U.S. at 109–10, 49 L. Ed. 2d at 353.

In the present case, defendant has not shown the Intoximeter source code to be "favorable" to his case or "material either to guilt or to punishment." Instead, defendant seeks to examine the source code in hopes that it will be exculpatory in nature or will lead to exculpatory material. Where defendant has failed to show discrepancies in the Intoximeter results, the materiality of the Intoximeter source code is speculative at best. Additionally, where the jury found defendant guilty of impaired driving under both N.C. Gen. Stat. § 20-138.1(a)(1) and (2), defendant has not shown a reasonable possibility that disclosure of the Intoximeter source code would have affected the outcome. Accordingly, we hold the trial court did not err in denying defendant access to the Intoximeter source code under *Brady v. Maryland*. Information that is only "potentially beneficial" to a defendant is not *Brady* material.[4]

Defendant's second constitutional argument is that the trial court's denial of his request to examine the Intoximeter source code is a violation of his Sixth Amendment right to confront those bearing testimony against him. Specifically, defendant contends that examination of the source code could have assisted him in exercising his right to confront his primary accuser, the Intoximeter.

The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, the Supreme Court interpreted the Confrontation Clause to grant a defendant the right to confront and cross-examine those witnesses that "bear testimony" against him. 541 U.S. 36, 51, 158 L. Ed. 2d 177, 192 (2004). The Court further emphasized

---

4. Other jurisdictions have held likewise in cases addressing similar issues under their respective state laws. *See State v. Bastos*, 33 Fla. L. Weekly D1541, 985 So. 2d 37 (Fla. 3d DCA 2008); *State v. Bernini*, 222 Ariz. 607, 218 P.3d 1064 (Ariz. Ct. App. 2009). We find those cases instructive.

that the right extends not only to in-court testimony, but also to out-of-court statements that are testimonial in nature and introduced at trial. *Id.* at 50-51, 158 L. Ed. 2d at 192. Following *Crawford*, in *Melendez-Diaz v. Massachusetts*, the Supreme Court extended the confrontation rights to grant a defendant the right to confront and cross-examine those individuals involved in the production of testimonial documents to be introduced at trial, such as the technician operating the Intoximeter in the present case. 557 U.S. 305, 310-11, 174 L. Ed. 2d 314, 321-22 (2009).

As applied to this case, neither *Crawford* nor *Melendez-Diaz* stands for the proposition that defendant has a right under the Sixth Amendment to examine the Intoximeter source code. Nevertheless, defendant argues that extending the holdings in *Crawford* and *Melendez-Diaz* to allow examination of the Intoximeter source code is the next logical step in the line of confrontation cases. We decline defendant's invitation to extend *Crawford* and *Melendez-Diaz* and hold defendant's Sixth Amendment right has not been infringed.

### N.C. Gen. Stat. § 15A-901

[3] In addition to discovery issues concerning the Intoximeter source code, both defendant and the State request that this Court address the more general issue concerning a defendant's right to discovery when a misdemeanor conviction is appealed for trial *de novo* in superior court.

At the outset, we recognize that, "[w]ith the exception of evidence falling within the realm of the *Brady* rule, . . . there is no general right to discovery in criminal cases under the United States Constitution[.]" *State v. Cunningham*, 108 N.C. App. 185, 195, 423 S.E.2d 802, 808 (1992) (citation omitted). Thus, a defendant's right to discovery beyond the scope of *Brady* is purely statutory. Pursuant to N.C. Gen. Stat. § 15A-901, *et. seq.*, a defendant has a right to statutory discovery only in "cases within the original jurisdiction of the superior court." N.C. Gen. Stat. § 15A-901 (2011). Thus, as stated in *State v. Cornett*, "[i]n North Carolina, no statutory right to discovery exists for criminal cases originating in district court." 177 N.C. App. 452, 455, 629 S.E.2d 857, 859 (2006).

In the present case, the district court had original jurisdiction over defendant's misdemeanor DWI charge. Consequently, defendant had no statutory right to pretrial discovery.

Defendant now asserts on appeal that N.C. Gen. Stat. § 15A-901 violates the Sixth, Eighth, and Fourteenth Amendments. Specifically, defendant contends the statute is arbitrary and a violation of due process. We disagree. As noted above, there is no constitutional right to discovery

beyond the realm of *Brady* material. "[T]hus a state does not violate the Due Process Clause of the Federal Constitution when it fails to grant pretrial disclosure of material relevant to defense preparation but not exculpatory." *Cunningham*, 108 N.C. App. at 195, 423 S.E.2d at 808.

In short, when a defendant's misdemeanor charge is within the original jurisdiction of the district court, the defendant is not entitled to statutory discovery but is, nonetheless, constitutionally entitled to discovery of *Brady* material.

In addition to defendant arguing the constitutionality of N.C. Gen. Stat. § 15A-901 on appeal, the State requests that we hold the trial court exceeded its authority under statute and erroneously granted discovery in its 18 November 2010 order. Upon review of the record, it appears the trial court ordered the State to produce the data from the Intoximeter in order to allow defendant a chance to prove the source code was material Brady information. Where the State voluntarily complied with the 18 November 2010 order, we will not hold that the trial court exceeded its authority.

## Motion for Appropriate Relief

**[3]** During defendant's trial, a factual issue arose as to whether Sergeant Paul Leroy of the PPD responded to the scene of the stop as backup to Officer Moore — Officer Moore testifying that Sergeant Leroy was present and defendant's wife testifying Officer Moore was the only officer present. Neither party, however, called Sergeant Leroy to testify at trial.

Following imposition of judgment, defendant filed an MAR pursuant to N.C. Gen. Stat. § 15A-1414(b)(3). In the MAR defendant contended that, in violation of due process, he did not receive a fair and impartial trial because Officer Moore falsely testified that Sergeant Leroy provided backup during the stop. In support of his MAR, defendant attached affidavits of his counsel and Sergeant Leroy. Without an evidentiary hearing, the superior court denied defendant's MAR by order filed 24 July 2012. In the order, the court found "[t]hat the conflicting testimony as to whether or not Sgt. Leroy was at the scene of the stop was a question of fact for the jury to determine and further it was in the jury's discretion to determine the importance of that evidence in light of all other believable evidence in the case."

Now on appeal, defendant's final argument is that the trial court erred in denying his MAR without an evidentiary hearing.

"When considering rulings on motions for appropriate relief, we review the trial court's order to determine 'whether the findings of fact

are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.' " *State v. Frogge*, 359 N.C. 228, 240, 607 S.E.2d 627, 634 (2005) (quoting *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982)). However, "[i]f 'the issues raised by Defendant's challenge to [the trial court's] decision to deny his motion for appropriate relief are primarily legal rather than factual in nature, we will essentially use a *de novo* standard of review in evaluating Defendant's challenges to [the court's] order.' " *State v. Jackson*, ___ N.C. App. ___, ___, 727 S.E.2d 322, 329 (2012) (quoting *State v. Taylor*, ___ N.C. App. ___, ___, 713 S.E.2d 82, 86, *disc. review denied*, 365 N.C. 342, 717 S.E.2d 558 (2011)) (alterations in original). Whether the trial court was required to afford defendant an evidentiary hearing is primarily a question of law subject to *de novo* review.

Citing N.C. Gen. Stat. § 15A-1420(c)(1) and *State v. McHone*, 348 N.C. 254, 258, 499 S.E.2d 761, 763 (1998), defendant argues that it is clearly established that a defendant who files an MAR is entitled to an evidentiary hearing to determine disputed issues of fact. We disagree.

N.C. Gen. Stat. § 15A-1420(c) governs hearings on an MAR. As stated in *McHone*,

> [u]nder subsection (c)(4), read *in pari materia* with subsections (c)(1), (c)(2), and (c)(3), an evidentiary hearing is required unless the motion presents assertions of fact which will entitle the defendant to no relief even if resolved in his favor, or the motion presents only questions of law, or *the motion is made pursuant to N.C.G.S. § 15A-1414 within ten days after entry of judgment.*

348 N.C. at 258, 499 S.E.2d at 763 (emphasis added). In *McHone*, the Court simply restated what is provided in the statute, "[a]n evidentiary hearing is not required when the motion is made in the trial court pursuant to G.S. 15A-1414, but the court may hold an evidentiary hearing if it is appropriate to resolve questions of fact." N.C. Gen. Stat. § 15A-1420(c)(2). The reasoning for not mandating an evidentiary hearing is clearly expressed in the commentary to N.C. Gen. Stat. § 15A-1420: "Obviously, it is unlikely that such an evidentiary hearing would be necessary on the immediate post-trial motion, made within 10 days as provided by G.S. § 15A-1414, and that is reflected in subdivision (c)(2)."

In the present case, the trial judge reviewed defendant's MAR made pursuant to N.C. Gen. Stat. § 15A-1414(b)(3) and the attached post-conviction affidavits. Based on all the evidence, the trial court determined

that defendant received a fair and impartial trial, received effective assistance of counsel, and none of defendant's rights were violated. We hold that disposing of the MAR without an evidentiary hearing was within the discretion of the trial judge. *See State v. Elliott*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006) ("[I]f a defendant files a motion for appropriate relief under N.C.G.S. § 15A–1414, the decision of whether an evidentiary hearing is held is within the sound discretion of the trial court."). Moreover, the trial judge did not abuse his discretion where the factual issue raised in the MAR could have been further litigated at trial.

## III. Conclusion

For the reasons discussed above, we hold the trial court did not err in failing to intervene in the State's closing argument *ex mero motu* and in denying defendant's motion to examine the Intoximeter source code. Furthermore, we affirm the order denying defendant's MAR.

No error; affirmed.

Judges CALABRIA and STEELMAN concur.