IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-468

 Filed: 5 January 2016

Carteret County, No. 08 CRS 5016, 54775-78

STATE OF NORTH CAROLINA

 v.

TODD JOSEPH MARTIN

 Appeal by Defendant from order entered 9 December 2014 by Judge Benjamin

G. Alford in Carteret County Superior Court. Heard in the Court of Appeals 5 October

2015.

 Attorney General Roy Cooper, by Assistant Attorney General Sherri Horner
 Lawrence, for the State.

 N.C. Prisoner Legal Services, Inc., by Lauren E. Miller, for Defendant.

 INMAN, Judge.

 This case arises from a motion for appropriate relief alleging ineffective

assistance of counsel in the second of two criminal trials, the first trial having

resulted in a hung jury on all but one charge. We hold that because the motion raised

disputed issues of fact, the trial court was required to conduct an evidentiary hearing

before denying relief, and we therefore reverse the order below and remand the

matter.
 STATE V. MARTIN

 Opinion of the Court

 Defendant Todd Joseph Martin (“Defendant”) appeals the order which denied

his motion for appropriate relief (“MAR”), without holding an evidentiary hearing, on

the grounds that: (1) his trial counsel’s performance fell within the range of

reasonable professional assistance; (2) counsel’s performance did not prejudice

Defendant; and (3) any errors committed were harmless beyond a reasonable doubt

and did not contribute to the guilty verdicts. On appeal, Defendant contends that the

trial court erred by: (1) denying Defendant access to postconviction discovery

statutorily authorized by N.C. Gen. Stat. § 15A-1415(f); (2) denying Defendant’s

motion for appropriate relief without holding an evidentiary hearing; and (3)

concluding that Defendant’s counsel was not constitutionally ineffective.

 After careful review, we reverse the trial court’s order and remand for further

proceedings.

 Factual and Procedural Background

 On 2 November 2009, Defendant was tried on charges of first degree

kidnapping, attempted murder, first degree rape, two counts of first degree sexual

offense, and assault by strangulation against his then-wife Mary1 based on incidents

that occurred on 19 August 2008. On 6 November 2009, the jury found Defendant

guilty of assault by strangulation. It remained deadlocked on the remaining charges.

The trial court declared a mistrial as to the remaining charges.

 1 We have used a pseudonym in an effort to protect the victim’s identity.

 -2-
 STATE V. MARTIN

 Opinion of the Court

 The case came on for trial again on 3 January 2011, Judge Benjamin G. Alford

presiding. Defendant was represented by a new attorney, Philip Clarke, III (“Mr.

Clarke” or “defense counsel”), after his original attorney withdrew. The testimony at

trial tended to establish the following: In 2008, Defendant and Mary separated but

Defendant remained actively involved with the couple’s two children who remained

in the family home with Mary. According to Mary’s testimony, during the evening of

18 August 2008, Defendant ate with her and the children and helped get them ready

for bed. After that, Defendant left to go to work. Mary denied that Defendant was

planning on returning to the home that night to sleep on the sofa. During the early

morning hours, Mary awoke and noticed that her television, which she generally kept

on, was off and saw her husband lying on the floor beside her bed, naked and sleeping.

Mary began yelling at him that he had to leave. Defendant then climbed on top of

her, removed her shorts, and starting penetrating her vaginally.

 Mary further testified that Defendant took her cell phone away and handcuffed

her to the bed using a set of novelty handcuffs from his nightstand. Mary denied that

she and Defendant had used the handcuffs before but acknowledged that they kept

other novelty items in the top drawer of the nightstand. She was able to release the

handcuffs, but once Defendant realized that she had done so, he stood on the bed,

pulled her up by her hair, and forced his penis into her mouth. He flipped her onto

her stomach after she tried to pull away and put her in a choke hold. He told her that

 -3-
 STATE V. MARTIN

 Opinion of the Court

he would kill her and “put [her] in a pond” near the house. Eventually, Mary lost

consciousness. During cross-examination, Mary claimed that she was screaming and

yelling during the entire incident prior to losing consciousness.

 When Mary woke up, Defendant was penetrating her anally, and she was lying

in a pool of urine on the bed. Mary testified that when Defendant was “ready to

finish,” he pulled her up and ejaculated in her mouth. Defendant laid on the bed and

eventually fell asleep. Before he fell asleep, Defendant told Mary that he had been

at a bar that night using cocaine and had planned to kill himself with a gun he kept

in his truck. After Defendant was asleep, Mary found her car keys, grabbed her two

children, and ran out the front door.

 Mary drove to her friend Ashley Lawson’s (“Ashley’s”) house. Mary told Ashley

that Defendant had tried to kill her. Ashley called the police. Eventually, Ashley

went with Mary to Carteret General Hospital where Mary worked part-time as a

nurse. In the emergency room, Mary met with Sheila Martin (“Sheila”), a sexual

assault nurse examiner (“SANE”), who examined Mary. Mary had been one of

Sheila’s students when Sheila was teaching part-time in a LPN program at the local

community college. Sheila took several swabs from Mary’s mouth, vagina, and anus.

 At trial, Sheila testified that after Mary told her the details of the assault,

Sheila conducted a head-to-toe exam. She noted petechiae—red or purple marks on

the skin caused by bleeding into the skin from broken capillaries–all over Mary’s face.

 -4-
 STATE V. MARTIN

 Opinion of the Court

She also noticed a mark on Mary’s neck, circumferential marks on her wrists, and a

small tear in the top of her mouth. Sheila also conducted a pelvic exam and noticed

no bruising or tears in Mary’s vaginal or rectal area. She testified that this was not

uncommon and that, in many cases of rape, there is no tearing or bruising. In other

words, according to Sheila, the absence of tearing or bruising does not necessarily

mean that sex was consensual. Sheila noticed some blood in Mary’s cervical os, an

opening between the cervix and the uterus.2

 Mary also testified at trial about a prior incident in March 2008 when

Defendant attempted to rape her but she was able to talk him out of it on that

occasion, and about two other incidents, in the spring or fall of 2006 and in January

or February in 2007, when Defendant had had sex with her against her will. After

the incident in March 2008, Mary called the police, and Officer Horst with the

Newport Police Department responded. After that incident, Mary claimed that she

and Defendant began attending counseling.

 Jessica Posto, a forensic biologist with the State Bureau of Investigation, (“Ms.

Posto”) testified at trial regarding the testing of evidence obtained from the sexual

assault evidence collection kit used at the hospital and from clothing Mary was

wearing the night of 18 August 2008. Ms. Posto found sperm on Mary’s tank top, but

 2At Defendant’s first trial, Sheila testified that the blood “could have been normal” and related
to Mary’s menstrual cycle; however, at the second trial, she was not asked about this earlier testimony
or whether the blood could be related to her menstrual cycle.

 -5-
 STATE V. MARTIN

 Opinion of the Court

vaginal, rectal, and oral swabs came back negative for semen. The vaginal swab

tested positive for blood.

 The only testimony defense counsel offered to rebut the State’s medical

evidence was that of Brent Turvey (“Mr. Turvey”). Mr. Turvey was a forensic scientist

hired by the defense to explain “why evidence is, what it means, what it does not

mean, very often what can be done with the evidence, [and] what hasn’t been doing

with the evidence.” In his affidavit attached in support of Defendant’s MAR, Mr.

Clarke refers to Mr. Turvey as an expert in “rape investigations.” However, Mr.

Turvey does not have a medical background. During voir dire, outside the presence

of the jury, Mr. Turvey claimed to have performed forensic examinations of sexual

assaults for court purposes, including crime reconstruction and examinations of the

physical evidence. Mr. Turvey stated that he had been asked to look at the physical

evidence in this case to determine whether it supported Mary’s version of the events.

During his lengthy voir dire, Mr. Turvey testified that the physical evidence was

inconsistent with the alleged version of events leading up to the sexual assault, the

physical evidence was inconsistent with Mary’s version of the sexual assault, and

there was evidence that Mary was making false sexual assault allegations that the

police failed to further investigate. Mr. Turvey attempted to testify several times

about the SANE’s findings, but Judge Alford stopped his testimony, noting that Mr.

Turvey did not have a medical degree.

 -6-
 STATE V. MARTIN

 Opinion of the Court

 After voir dire, Judge Alford excluded Mr. Turvey’s testimony, noting that:

 the Court has heard the testimony of Mr. Turvey, has
 reviewed his curriculum vitae. He has, the Court has
 reviewed his forensic examination, and from all of that this
 Court can only conclude that the defendant seeks through
 Mr. Turvey to offer certain opinions about the
 investigation that was done in this case about which expert
 testimony is not needed. He also seeks in his opinions to
 invade the province of the jury. He also seeks to offer
 opinions on the evidence involving the credibility of certain
 witnesses and other evidence, which is totally, totally
 within the province of the jury; and we don't need expert
 testimony to show inconsistencies in the evidence, and as
 such and for other reasons, this Court will not permit the
 admission of that testimony or his admission as an expert
 witness.

Judge Alford acknowledged that “inconsistencies” existed in this case but that

“nobody needs an expert to show[] those inconsistencies.”

 Defendant, who testified on his own behalf at trial, admitted engaging in sex

with Mary, but claimed that it was consensual and that nothing the couple did that

night was “new.” According to Defendant, after engaging in consensual sex, Mary

began asking him about other women. Defendant admitted to her that he had been

talking to another woman and that he was planning to see her. Defendant refused to

identify the woman because it would “confirm [Mary’s] suspicions.” Mary became

very upset and started threatening Defendant about his job and the children. Mary

tried to kick him out of the house, and Defendant admitted that he placed her in a

chokehold. After he released her, Defendant told her that “if [she] keep[s] fucking

 -7-
 STATE V. MARTIN

 Opinion of the Court

around [he’ll] put [her] ass in that pond.” Mary went to the bathroom and noticed

how red her eyes were from being placed in the chokehold. Eventually, Defendant

fell asleep. When he woke around 5:15 a.m., he noticed that Mary and the children

were gone. Defendant called Mary’s phone and knew, based on the background

noises, that she was at the hospital. He drove to the hospital to try and see her, but

he was refused access. Defendant was arrested later that same day.

 On 7 January 2011, the jury returned not guilty verdicts for the charges of

attempted murder and first degree rape. The jury found Defendant guilty of first

degree kidnapping, first degree sexual offense (fellatio), and second degree sexual

offense (anal intercourse). On 7 August 2012, this Court vacated Defendant’s

conviction for first degree kidnapping because it violated double jeopardy. See State

v. Martin, 222 N.C. App. 213, 221, 729 S.E.2d 717, 723 (2012). Judge Alford

sentenced defendant to a minimum term of 100 months to a maximum term of 129

months imprisonment for second degree sexual offense and 288 to 355 months

imprisonment for first degree sexual offense, sentences to run consecutively.3

 On 10 March 2014, Defendant filed a MAR, arguing that his constitutional

right to effective counsel was violated because of his counsel’s several failings during

the second trial. Defendant claimed that his counsel’s failure to procure an

evaluation by a medical expert to rebut the testimony of Sheila fell short of

 3 Although Defendant had also been sentenced for first degree kidnapping, this Court’s opinion
vacating this conviction did not affect Defendant’s sentences for the sexual offenses.

 -8-
 STATE V. MARTIN

 Opinion of the Court

professional standards. Specifically, Defendant alleged that his counsel should have

known that Mr. Turvey’s testimony would be inadmissible and that another expert

could have been properly admitted as an expert to discount Sheila’s claims that the

evidence supported rape. Defendant also claimed that his counsel was ineffective for

failing to impeach Mary with her reports to Sheila and the lead detective.

Specifically, Defendant contended that his trial counsel should have impeached her

with her inconsistent statements about how she was handcuffed in her report to the

police; her report to police that she was penetrated digitally, which she denied at trial;

and a prior false allegation of rape Mary had made as a teenager.4

 Defendant also alleged that his trial counsel was ineffective for failing to cross-

examine Mary about her previous trial testimony denying that Defendant kept

toiletries in the bathroom and about her conversation with Defendant at the time she

was being examined in the emergency room. Defendant also alleged that his trial

counsel was ineffective for failing to object to the admission of hearsay evidence

contained in a written statement by Ashley, the friend who took Mary to the hospital.

Ashley wrote in the statement that Mary’s daughter told her that “she [had] heard

mommy screaming help in her pillow.”

 Finally, Defendant alleged that his counsel was ineffective for failing to cross-

examine the State’s witnesses regarding the following information: (1) the bed sheets

 4 The prior false allegation was introduced by defense counsel to impeach Mary’s credibility in
the first trial.

 -9-
 STATE V. MARTIN

 Opinion of the Court

were never tested by police to see if there was any urine on them, even though police

took the sheets into evidence; this is even more important, according to Defendant,

because Mary testified at the first trial that the urine on her was from her daughter;

(2) a police officer who responded to the neighboring duplex that night testified in

Defendant’s first trial that he did not hear any screaming even though Mary testified

that she screamed throughout the incident; (3) defense counsel failed to establish that

the police officer who sat with Defendant while he was being tested did not observe

any signs that Defendant had been engaged in any type of assault or struggle; (4)

even though Mary testified that she had not had sex with Defendant since late July

or early August, photographs show an open condom wrapper and a used condom in

her bedroom; (5) police failed to test the condom wrapper or used condom for evidence;

and (6) police failed to take any photographs of the headboard where Mary claimed

she was handcuffed during the attack.

 Defendant submitted, along with his MAR, an affidavit by Mr. Clarke

admitting all of the errors alleged in Defendant’s MAR. Mr. Clarke stated under oath

that none of his failures had been strategic decisions. Defendant also submitted an

affidavit by Bonnie Price, another SANE, who has been admitted as an expert in

North Carolina courts, and Sarah Olson, who is employed as Forensic Resource

Counsel with IDS, showing that each was available to consult with Mr. Clarke before

trial.

 - 10 -
 STATE V. MARTIN

 Opinion of the Court

 At the time he filed the MAR, Defendant also filed a motion for discovery,

pursuant to N.C. Gen. Stat. § 15A-1415(f), contending that he was entitled to all

documents generated by the law enforcement and prosecuting agencies involved in

Defendant’s case. On 9 December 2014, Judge Alford denied the MAR without

holding a hearing. In his order denying the motions, Judge Alford made the following

pertinent findings:

 10. All questions of fact are resolved by the motion, the
 state's response, exhibits, affidavits, the court file, the
 Appellate Court decision and the trial transcripts.

 11. Counsel's performance was not so deficient to have the
 defendant found not guilty of Attempted First Degree
 Murder and First Degree Rape.

 12. On appeal the defendant failed to raise ineffective
 assistance of counsel.

 13. Counsel's performance was reasonable under
 prevailing professional norms.

 14. The jury was in a position to hear all the evidence and
 judge the credibility of all the witnesses including the
 testimony of the defendant.

 15. Any error that may have been committed by counsel
 was harmless beyond a reasonable doubt and did not
 contribute to the verdict obtained.

 Defendant timely appeals.

 Analysis

 - 11 -
 STATE V. MARTIN

 Opinion of the Court

 Defendant argues that the trial court erred by denying him an evidentiary

hearing on his MAR claiming ineffective assistance of counsel. We agree, because the

trial court resolved the motion by deciding issues of fact contrary to Defendant’s

allegations.

 The procedure governing MARs is set out in N.C. Gen. Stat. § 15A-1420 (2013),

and subsection (c) discusses the trial court’s duty to hold an evidentiary hearing on

such motions:

 (c) Hearings, Showing of Prejudice; Findings. —

 (1) Any party is entitled to a hearing on questions of law or
 fact arising from the motion and any supporting or
 opposing information presented unless the court
 determines that the motion is without merit. The court
 must determine, on the basis of these materials and the
 requirements of this subsection, whether an evidentiary
 hearing is required to resolve questions of fact. Upon the
 motion of either party, the judge may direct the attorneys
 for the parties to appear before him for a conference on any
 prehearing matter in the case.

 ...

 (3) The court must determine the motion without an
 evidentiary hearing when the motion and supporting and
 opposing information present only questions of law. The
 defendant has no right to be present at such a hearing
 where only questions of law are to be argued.

 - 12 -
 STATE V. MARTIN

 Opinion of the Court

 This Court reviews the trial court’s conclusions of law in an order denying an

MAR de novo.5 State v. Jackson, 220 N.C. App. 1, 8, 727 S.E.2d 322, 329 (2012).

“Whether the trial court was required to afford defendant an evidentiary hearing is

primarily a question of law subject to de novo review.” State v. Marino, __ N.C. App.

__, __, 747 S.E.2d 633, 640 (2013), disc. review denied, 367 N.C. 263, 749 S.E.2d 889

(2013).

 In interpreting the statutes regarding an evidentiary hearing, this Court has

noted:

 Under subsection (c)(4) [of N.C. Gen. Stat. § 15A-1420],
 read in pari materia with subsections (c)(1), (c)(2), and
 (c)(3), an evidentiary hearing is required unless the motion
 presents assertions of fact which will entitle the defendant
 to no relief even if resolved in his favor, or the motion
 presents only questions of law. Thus, the ultimate question
 that must be addressed in determining whether a motion
 for appropriate relief should be summarily denied is
 whether the information contained in the record and
 presented in the defendant's motion for appropriate relief
 would suffice, if believed, to support an award of relief.

 5We note that the standard of review employed by this Court in reviewing a defendant’s MAR
is a matter in dispute by the parties. The State is correct that a trial court’s decision to deny a
defendant’s MAR brought under N.C. Gen. Stat. § 15A-1414 is reviewed for an abuse of discretion. See
State v. Elliott, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006). However, here, Defendant’s MAR was
brought under a different statute, N.C. Gen. Stat. § 15A-1415. Moreover, the issue we decide is not
whether the trial court erred in denying the MAR but, rather, whether the trial court erred in denying
it without holding a hearing, which requires a separate and distinct analysis.

 - 13 -
 STATE V. MARTIN

 Opinion of the Court

Jackson, 220 N.C. App. at 6, 727 S.E.2d at 328 (internal quotation marks and

citations omitted).

 Here, Judge Alford disposed of Defendant’s MAR without holding a hearing

because all questions of fact were “resolved” by the pleadings and because Defendant

failed to show that his counsel’s performance was constitutionally ineffective or that

Defendant suffered any prejudice as a result of his counsel’s performance.

Defendant’s MAR was based, generally, on his claims that his trial counsel was

ineffective for: (1) failing to use testimony from Defendant’s first 2009 trial to impeach

the witnesses during the second trial; (2) failing to obtain a qualified medical expert

to rebut the testimony of Sheila; (3) failing to properly cross-examine the State’s

witnesses, primarily the police officers, about their failure to properly collect and test

all of the evidence in the case; and (4) failing to object to the admission of Ashley’s

written statement regarding Mary’s daughter’s statement.

 While we do not think that all the evidence Defendant listed in his brief related

to impeachment was especially compelling,6 we are persuaded that defense counsel’s

failure to obtain a medical expert to rebut the testimony of Sheila, the sexual abuse

nurse examiner, and his failure to properly cross-examine the State’s witnesses with

regard to material evidence that could have had a substantial impact on the jury’s

 6We note that Mr. Clarke actually did impeach the witnesses on some of the evidence listed
in Defendant’s brief. Specifically, defense counsel impeached Mary regarding the knives in the
bedroom and her claim that Defendant made her bite his neck.

 - 14 -
 STATE V. MARTIN

 Opinion of the Court

verdict, entitles Defendant to an evidentiary hearing. This was a case of “he said, she

said” with no physical evidence of rape. There was no evidence of semen in Mary’s

vagina, anus, or mouth. While Sheila testified that the evidence she obtained during

her examination of Mary did not necessarily show consensual sex, the absence of any

signs of violence provided defense counsel an opportunity to contradict Mary’s

allegations with another medical expert, an opportunity which defense counsel

inexplicably failed to take. Bonnie Price, who has been a SANE since 2002, stated in

her affidavit in support of the MAR that, in her experience, about half of the

examinations of patients reporting rape involve anogenital findings and half do not.

This affidavit, standing on its own, was not sufficient to compel the trial court to allow

the MAR, but it demonstrates the factual nature of the dispute and the significance

of expert medical testimony. Because the trial court did not conduct an evidentiary

hearing, we do not know what Ms. Price’s further testimony would have been. The

analysis of this evidence is especially material because Sheila and Mary had a prior

relationship which could have undermined the credibility of Sheila’s testimony.

 Moreover, while Mr. Clarke attempted to introduce the expert testimony of Mr.

Turvey to rebut Sheila’s testimony, it was reasonably foreseeable that the trial court

would exclude it because Mr. Turvey, the proposed expert, had no medical training

and because the testimony was clearly outside the scope of his competency.

 - 15 -
 STATE V. MARTIN

 Opinion of the Court

 Finally, impeachment evidence that may undermine the State’s case could be

further strengthened by the fact that the police failed to collect key evidence that

could have substantiated or contradicted Mary’s allegations. The police did not

photograph the bed’s headboard where Mary claimed she was handcuffed during the

rape. The bedsheets were not photographed or tested for evidence of urine. It is

undisputed that the police did not test, collect, or even ask Mary about a used condom

and condom wrapper found in the bedroom immediately after she reported being

raped. These obvious gaps in the police investigation as to crucial evidence should

have been exposed by Mr. Clarke during trial.

 In totality, our review, in conjunction with Mr. Clarke’s own admissions that

he made nonstrategic decisions that probably had an impact on the jury’s finding of

guilt, the factual circumstances of this case were such that an evidentiary hearing

should have been held to fully develop the validity of Defendant’s ineffective

assistance of counsel claim. We do not decide whether the evidence put forth in

Defendant’s MAR was sufficient to entitle him to relief, but it was enough to raise a

factual dispute and, therefore, entitled Defendant to an evidentiary hearing.

 Defendant also argues that the trial court erred by denying his MAR before

Defendant had received the postconviction discovery he was entitled to under section

15A-1415 (f), (g) and requested in his motion for postconviction discovery. While it is

undisputed that Defendant obtained some discovery from the original prosecuting

 - 16 -
 STATE V. MARTIN

 Opinion of the Court

agency’s file, Defendant’s appellate counsel in oral argument claimed that a “critical

piece of discovery,” an August 2008 videotaped interview between Mary, Detective

Fuller, and someone from the rape crisis center “that was referenced by other

discovery materials and by the lead detective[,]” was not provided. We remand this

issue for consideration by the trial court.

 N.C. Gen. Stat. § 15A-1415(f)7 states that

 In the case of a defendant who is represented by counsel in
 postconviction proceedings in superior court, the
 defendant's prior trial or appellate counsel shall make
 available to the defendant's counsel their complete files
 relating to the case of the defendant. The State, to the
 extent allowed by law, shall make available to the
 defendant's counsel the complete files of all law
 enforcement and prosecutorial agencies involved in the
 investigation of the crimes committed or the prosecution of
 the defendant.

 Even though Defendant filed a motion for discovery contemporaneously with

his MAR and a motion to stay a decision on the MAR until his counsel had received

all postconviction discovery, the trial court made no findings or conclusions regarding

Defendant’s access, or lack thereof, to all the postconviction discovery he was entitled

to receive. The State conceded at oral argument that Defendant’s attorney in his

original 2009 trial referenced this videotape but represented that this evidence is

simply “unavailable.” The State argues that because there is no evidence that this

 7Although the statute previously applied only to capital defendants, it was amended effective
1 December 2009 and now applies to all postconviction proceedings in superior court.

 - 17 -
 STATE V. MARTIN

 Opinion of the Court

tape would have made any difference at trial, Defendant is not entitled to any relief

on this ground.

 Because the videotape is missing, we are unable to ascertain the exact nature

of the evidence on the tape, decide whether it was a material piece of evidence, or

determine the status of this evidence given its undisputed existence but unclear

location. The record sheds no light on why the videotape is missing. Therefore, on

remand, Judge Alford should also address whether the State failed to fully comply

with N.C. Gen. Stat. § 15A-1415(f) and whether Defendant is entitled to any relief

due to the State’s failure to provide it. See generally State v. McDowell, 310 N.C. 61,

73, 310 S.E.2d 301, 309 (1984) (explaining the standard of review a trial judge

undertakes when reviewing a defendant’s MAR and determining whether he is

entitled to a new trial based on undisclosed evidence: “Would the evidence, had it

been disclosed to the jury which convicted defendant, and in light of all other evidence

which that jury heard, likely have created in the jury's mind a reasonable doubt which

did not otherwise exist as to defendant's guilt?”).

 Conclusion

 For the reasons set out above, because “the facts disclosed in defendant's

motion for appropriate relief reveal issues of fact which could not be resolved solely

on the basis of [the record],” the trial court erred in failing to conduct an evidentiary

hearing that would have allowed Defendant “to produce evidence to substantiate his

 - 18 -
 STATE V. MARTIN

 Opinion of the Court

allegations” in the MAR. State v. Hardison, 126 N.C. App. 52, 57, 483 S.E.2d 459,

462 (1997). Therefore, we reverse the trial court’s order and remand for hearings

consistent with this opinion.

 REVERSED AND REMANDED.

 Chief Judge McGEE and Judge ELMORE concur.

 - 19 -